# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday, the 23rd day of April, 2026.*

Present: Powell, C.J., Kelsey, McCullough, Chafin, Russell, Mann, JJ., and Millette, S.J.

JASON JOSEPH FERGESON,                                              APPELLANT,

 against        Record No. 250302
                Court of Appeals No. 0182-24-1

COMMONWEALTH OF VIRGINIA,                                          APPELLEE.

UPON AN APPEAL FROM A
JUDGMENT RENDERED BY THE
COURT OF APPEALS OF VIRGINIA.

Jason Joseph Fergeson appeals his conviction for misdemeanor abuse or neglect of a vulnerable adult, in violation of Code § 18.2-369. He contends that the adult in question, his girlfriend, was not "vulnerable" as defined by the statute because she was only temporarily intoxicated rather than chronically ill or disabled. Finding the evidence sufficient to support Fergeson's conviction, we affirm the judgment of the Court of Appeals.

## I.  BACKGROUND

### A.  THOMPSON'S OVERDOSE

Under familiar principles of appellate review, we recite the evidence in the light most favorable to the Commonwealth, the prevailing party below. *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024).

On the morning of November 9, 2022, A.J. Burrell and his neighbor were driving near the King William Travelodge in Williamsburg. In a wooded area behind the property, the pair spotted Fergeson and his girlfriend, Lindsey Thompson. Thompson lay slumped against a tree,

non-responsive. Her face was pale and her lips were blue. Fergeson stood crouched over Thompson, slapping her face, in an apparent effort to awaken her.

Concerned about Thompson's wellbeing, Burrell and his neighbor exited their vehicle and approached Fergeson. Fergeson was unperturbed. He asked the pair for a ride up the street, intending to leave Thompson where she was. Burrell and his neighbor refused, alarmed that Thompson appeared not to be breathing. Fergeson tried to dismiss their concerns; he told them not to call 9-1-1 because, as he put it, Thompson "does that all the time." Burrell and his neighbor called 9-1-1 nonetheless.

As they waited for first responders, Burrell and his neighbor kept the 9-1-1 operator on speaker phone. Fergeson, who likewise remained on the scene, refused to allow Burrell or his neighbor to come within ten feet of Thompson, despite the operator's urging that someone begin performing CPR on Thompson immediately. Fergeson told Burrell and his neighbor to "move away" from Thompson several times, and he continued to repeat that Thompson "does this normally." When the operator asked for an update on Thompson's breathing, Fergeson falsely relayed that she was breathing normally. Burrell told the operator he thought Thompson had died.

Minutes later, emergency responders arrived on scene and found Thompson unconscious. Her breathing was shallow and eventually stopped completely. Paramedics began mechanically-assisted breathing to prevent her from dying. Field testing confirmed a buildup of carbon dioxide in Thompson's bloodstream, which indicated a prolonged period of shallow breathing. Thompson was transported to the hospital by ambulance for a suspected drug overdose. En route, she was given the anti-overdose drug, Narcan, intranasally. Shortly after arriving at the hospital, she was also given an intravenous Narcan drip.

2

Thompson's bloodwork revealed the presence of several controlled substances in her system, including morphine, cocaine, and a large amount of fentanyl.[1] While opioids like morphine and fentanyl have legitimate pharmacological uses, often as sedatives, Thompson had ingested the equivalent of ten times the amount of fentanyl required to sedate an average, nontolerant patient. Several other fentanyl-based compounds identified in her bloodstream suggested that the drugs had been illegally manufactured.

The Commonwealth's expert witness, a forensic toxicologist, explained that opioids target a specific receptor in the brain; the interaction between drug and receptor is what produces a euphoric effect in the user. Overdose, she explained, occurs when that receptor becomes overloaded. This impedes the body's ability to take in oxygen, which, in turn, causes "coma or death." Narcan works by freeing that receptor and blocking it from further contact with opioids, thereby allowing the body to recover. Narcan's effect is temporary though. It frequently requires readministration because it depletes quicker than the opioids. Nevertheless, the forensic toxicologist testified that she had never heard of an overdose victim requiring an intravenous Narcan drip. This, she opined, suggested that the attending doctors believed Thompson would immediately relapse and die without a continuous infusion of the drug.

Thompson survived the episode and discharged herself from the hospital the next day.

B. THE TRIAL COURT

Fergeson was indicted on two counts: felony abuse or neglect of a vulnerable adult, in violation of Code § 18.2-369, and misdemeanor interference with a 9-1-1 call, in violation of Code § 18.2-164. He elected a bench trial.

---

[1] Thompson's medical records, admitted into evidence without objection, noted her "history of polysubstance abuse," including "a known history of opiate abuse" and cocaine abuse.

3

At the close of the Commonwealth's case-in-chief, Fergeson moved to strike both charges. He argued that Code § 18.2-369 was inapplicable because he was not a "responsible person," his actions did not constitute "abuse or neglect," and Thompson was not a "vulnerable adult," as defined in the statute. Fergeson also contended that Thompson had not suffered serious bodily injury, as required to support the offense's felony gradation. As for the misdemeanor interference with a 9-1-1 call, Fergeson argued that he had not threatened anyone against calling the police, nor had he damaged their phones. The trial court denied his motion.

Fergeson then briefly testified in his own defense before renewing his motion to strike. The trial court again denied his motion. Presumably because closing arguments would have mirrored the motion to strike, the trial court dispensed with closing arguments, without objection, and announced its verdict.

On the charge alleging interference with a 9-1-1 call, the trial court found Fergeson guilty of attempted interference, a lesser-included offense. It explained that while Burrell had successfully dialed 9-1-1, making the completed offense inapplicable, Fergeson had still attempted to prevent Burrell from doing so.

On the abuse or neglect of a vulnerable adult charge, the trial court likewise found Fergeson guilty, though only of a misdemeanor. Reviewing each of the statutory elements, the trial court first found that Fergeson had "neglected" Thompson through his willful failure to provide her with care. It also noted that Fergeson's intentional conduct equally amounted to "abuse" under Code § 18.2-369. Next, it said, Thompson qualified as a "vulnerable adult" because she had been utterly unresponsive. The temporary nature of her incapacitation, the trial court said, did not matter. Finally, while Fergeson—as Thompson's romantic partner—did not automatically owe her a heightened duty of care, Fergeson nevertheless became a "responsible

4

person" under Code § 18.2-369 when he assumed control of the scene and prevented bystanders from rendering aid. Finding no serious bodily injury to Thompson, however, the trial court reduced the gradation of the charge to misdemeanor neglect of a vulnerable adult. Fergeson was sentenced to twelve months' incarceration on each count. He timely appealed to the Court of Appeals.

### C. THE COURT OF APPEALS

By published opinion, a unanimous panel of the Court of Appeals affirmed the trial court's judgment. *Fergeson v. Commonwealth*, 84 Va. App. 80, 85 (2025). It held that the evidence was sufficient to sustain both of Fergeson's convictions. *Id.* at 89.

Addressing first the conviction for abuse or neglect of a vulnerable adult, the Court of Appeals explained that Thompson met Code § 18.2-369(C)'s definition of a "vulnerable adult." That subsection defines vulnerability as "impair[ment] by reason of mental illness, intellectual or developmental disability, physical illness or disability, or other causes, including age." *Id.* at 90 (quoting Code § 18.2-369(C)). The Court of Appeals defined "impaired" as "functioning poorly or incompetently," and "illness" as "the quality, state or condition of being sick; bodily or mental indisposition." *Id.* at 91 (cleaned up). "Disability," it said, "means 'a physical or mental condition that significantly limits a person's motor, sensory, or cognitive abilities.'" *Id.* The Court of Appeals also noted that the list broadly includes "other causes," which it said defies temporal limitation and instead "focuses on the impact of the condition on the adult." *Id.* "Regardless of whether Thompson's condition is considered a physical illness or an 'other cause,'" the Court of Appeals explained, "it certainly impaired her ability to care for herself." *Id.* at 92. Thompson "was entirely incapacitated and vulnerable." *Id.*

5

The Court of Appeals next concluded that Fergeson became a "responsible person" in fact when he assumed control of Thompson's care and unsuccessfully attempted to prevent Burrell or his neighbor from calling the police or performing CPR on Thompson. *Id.* at 94-95.

Finally, Fergeson's actions were sufficiently willful, rather than accidental, to constitute either "abuse" or "neglect" under the statute. *Id.* at 95-96. Thus, the Court of Appeals concluded that a rational trier of fact could have found all elements of the offense had been met.

We awarded Fergeson this appeal, which challenges only Thompson's classification as a "vulnerable adult" under Code § 18.2-369(C).[2]

II. ANALYSIS

A. STANDARD OF REVIEW

"When reviewing the sufficiency of the evidence to support a conviction, 'the relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Jefferson v. Commonwealth*, 298 Va. 1, 10 (2019) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)) (emphasis added). "In answering this limited question," appellate courts must "'accord the Commonwealth the benefit of all reasonable inferences deducible from the evidence.'" *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024) (quoting *Brown v. Commonwealth*, 278 Va. 523, 527 (2009)). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017).

---

[2] The Court of Appeals also affirmed Fergeson's conviction for attempted interference with a 9-1-1 call, however, as Fergeson's petition for appeal assigned error only to the Court of Appeals' "vulnerable adult" ruling, we address only this discrete inquiry. *See* Rule 5:17(c)(1)(i) ("Only assignments of error assigned in the petition for appeal will be noticed by this Court.").

6

This Court reviews questions of statutory interpretation de novo. *Baker v. Commonwealth*, 284 Va. 572, 576 (2012).

B.  THOMPSON QUALIFIED AS A "VULNERABLE ADULT" UNDER CODE § 18.2-369(C)

"The primary purpose of statutory interpretation 'is to ascertain and give effect to legislative intent.'" *Botkin v. Commonwealth*, 296 Va. 309, 314 (2018) (quoting *Brown v. Commonwealth*, 284 Va. 538, 542 (2012)).  "This Court determines legislative intent from the words employed in the statute." *Id.* (quoting *Alger v. Commonwealth*, 267 Va. 255, 259 (2004)). Words "are to be construed according to their ordinary meaning, given the context in which they are used." *GEICO Advantage Ins. Co. v. Miles*, 301 Va. 448, 455 (2022) (quoting *City of Va. Beach v. Bd. of Supervisors*, 246 Va. 233, 236 (1993)).  "If language is clear and unambiguous, there is no need for construction by the court; the plain meaning and intent of the enactment will be given it." *Botkin*, 296 Va. at 314.

Code § 18.2-369(A) prohibits any "responsible person" from "abus[ing] or neglect[ing]" any "vulnerable adult."  As noted above, Fergeson has abandoned his challenge to the first and second of these elements; he contests only Thompson's classification under the third.

Code § 18.2-369(C) defines a "vulnerable adult" as:

> any person 18 years of age or older who is impaired by reason of mental illness, intellectual or developmental disability, physical illness or disability, or other causes, including age, to the extent the adult lacks sufficient understanding or capacity to make, communicate, or carry out reasonable decisions concerning his well-being or has one or more limitations that substantially impair the adult's ability to independently provide for his daily needs or safeguard his person, property, or legal interests.

Fergeson, who has never argued that Thompson was underage, conceded during oral argument that Thompson was "impaired" to the extent required by the statute.

7

Fergeson's argument, instead, turns narrowly on subsection (C)'s list of qualifying causes of impairment. Specifically, he contends that the General Assembly enacted the statute only to protect those suffering from "developmental, mental, or otherwise long-lasting and enduring" conditions. He notes that the statute "does not mention 'intoxication' or any other form of temporary impairment," and that those omissions show the legislature's intent to exclude non-chronic conditions from the statute's reach. He also urges that several canons of construction, including the rule of lenity, support a narrower application of the statute.

The Commonwealth counters that a victim need not suffer from a chronic condition under the statute because Code § 18.2-369(C) contains no temporal limitation. Even one suffering from a temporary impairment, such as voluntary intoxication, would qualify. At oral argument, the Commonwealth clarified that the statute's limiting principle is not the permanence of the impairment itself; rather, it is the extent of the impairment, which must rise to the requisite level as described in the second half of the definition. Thompson, the Commonwealth argues, was "unconscious, nonresponsive, and barely breathing," and thus, plainly impaired to the required degree here.

"As we have often said," however, "'[t]he doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available.'" *Commonwealth v. White*, 293 Va. 411, 419 (2017) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)). While the parties debate a broader point of statutory interpretation—whether the definition of "vulnerable adult" encompasses one who is only temporarily intoxicated—Fergeson's appeal is, at bottom, a challenge to the sufficiency of the evidence. Because "this limited question," *Garrick*, 303 Va. at 182, can be resolved on the facts of this case, we need go no further than that: A rational trier of fact could conclude that Thompson's impairment was not, in fact, caused by mere temporary

8

intoxication, but rather, by a near-fatal overdose—a condition encompassed by the plain language of the statute.

The Commonwealth's forensic toxicologist in this case explained that opioid overdose occurs when the drug overloads a specific receptor in the brain. This has the effect of inhibiting the body's oxygen intake, which causes coma or death. Thompson—who suffered complete respiratory failure after a prolonged period of shallow breathing—was well on her way to the latter. Only with massive medical intervention, including mechanically-assisted breathing and novel use of an intravenous Narcan drip, was she able to be resuscitated. Contrary to Fergeson's characterization of her state as something temporary, a rational trier of fact could conclude that Thompson's condition was not a mere transient blackout or passing episode of reduced capacity from which she would have eventually recovered; rather, it was a near-fatal episode, with death stayed only by treatment.

We agree with the Court of Appeals that, under these circumstances, it is not necessary to delineate the exact category into which Thompson's condition fell. Whether a "physical illness or disability," or an "other cause," the plain language of Code § 18.2-369(C) evinces the General Assembly's intent to protect, at a minimum, individuals who are impaired to the magnitude that Thompson was here. As the Court of Appeals correctly observed, "[n]ot every illness is chronic or long term, and yet could cause impairment within the meaning of a statute." *Fergeson*, 84 Va. App. at 80. We likewise find apt its analogy to stroke: "[T]he effects of a stroke," it said, "can be temporary or long-term; some people recover very quickly, while others recover more slowly or have long-term issues. Thus, the focus of the statute appears to be on the impairment of the adult regardless of the duration of that impairment." *Id.* We agree.

9

While we acknowledge that the application of this statute may, in other cases, result in ambiguity, it does not do so here.  Because the plain language of Code § 18.2-369(C) unambiguously captures the nature of Thompson's impairment, it is unnecessary to resort to canons of statutory construction, including the rule of lenity.  *See Botkin*, 296 Va. at 314 ("When an enactment is clear and unequivocal, general rules for construction of statutes do not apply."); *see also Holsapple v. Commonwealth*, 266 Va. 593, 598 (2003) (rule of lenity applies only to ambiguous penal statutes).  Thus, the trial court's interpretation of Code § 18.2-369(C) was correct here, and its judgment was not plainly wrong.  *Pijor*, 294 Va. at 512.  Accordingly, the Court of Appeals did not err by affirming it.

III. CONCLUSION

Our holding today is a narrow one.  We do not conclude that impairment by reason of temporary intoxication *per se* renders an adult "vulnerable" within the meaning of Code § 18.2-369(C).  That is a question for another day.  We hold only that the evidence in this case was sufficient for a rational trier of fact to conclude that the magnitude of Thompson's condition rendered her a "vulnerable adult" under the plain language of Code § 18.2-369(C).

The judgment of the Court of Appeals is affirmed.  This order shall be published in the Virginia Reports and certified to the Court of Appeals and the Circuit Court of the City of Williamsburg and James City County.

A Copy,

Teste:

*[signature]*

Clerk

10